UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ONE VODKA, LLC,

              Plaintiff,

v.                                          Civil Case No. 21-11456
                                            Honorable Linda V. Parker

BENCHMARK BEVERAGE
COMPANY, LLC,

              Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS [7] AND FOR LEAVE TO FILE [11]

Plaintiff, One Vodka, LLC, is a Texas-based craft vodka start-up. Defendant, Benchmark Beverage Company, LLC, is a Michigan state-level broker of spirits. Plaintiff initiated this action for trademark infringement and unfair competition after Defendant acquired Plaintiff's product and resold it in Michigan at a discounted price. Before the Court are Defendant's Motion to Dismiss [7] and Defendant's Motion For Leave to File Notice of Supplemental Authority or in the Alternative a Sur-Reply [11]. Both have been fully briefed. (ECF No. 9; ECF No. 10; ECF No. 12; ECF No. 13). Pursuant to L.R. 7.1(f)(2), the Court finds Defendant's Motions [7, 11] appropriate for determination without a hearing. For the reasons set forth below, Defendant's Motions [7, 11] will be **GRANTED**.

## BACKGROUND

On August 1, 2016, Plaintiff entered into an Engagement Agreement with Redemption Spirits, LLC, d/b/a American Spirits Exchange Ltd. ("ASE"), a Pennsylvania-based spirits importer and distributor. (ECF No. 9-4). Pursuant to that Agreement, ASE would import Plaintiff's product, One Vodka, into the United States from France, warehouse it in Pennsylvania, and process orders to spirits wholesalers and brokers authorized by Plaintiff. (ECF No. 9-2, PageID.141, 143, 146). In exchange, Plaintiff paid ASE for its services. (*Id.*).

For three-plus years, Plaintiff and ASE had an amicable relationship. Plaintiff sometimes fell behind on its payments, but because ASE recognized that arrearages were common among its start-up clients, it "never pressed [Plaintiff] for payment" and always "allowed [Plaintiff] to catch up" without penalty. (ECF No. 9-2, PageID.143-44). Indeed, "[b]y [the] summer of 2019, [Plaintiff's] sales had started to improve[,] and [its] account [with ASE] was paid up." (*Id.* at 144).

But then came the pandemic. Between February and August 2020, "[Plaintiff] experienced a terrible downturn in business." (*Id.*). "For a period of time[,] there were no sales, no shipments, no deliveries[,] and thus no income or revenue." (*Id.*). Although "ASE [went on] allow[ing] for late payments," Plaintiff continued to fall further and further behind. (*Id.*; ECF No. 9-5, PageID.168). Consequently, on April 13, 2020, ASE entered into discussions with Defendant regarding Defendant's

2

possible purchase of ASE's inventory of One Vodka. (ECF No. 7-2, PageID.49). These discussions were fruitful, and on June 23, 2020, after beginning the process of registering One Vodka's Certificate of Label Approval ("COLA")[1] in Michigan, Defendant sent ASE a purchase order. (*Id.* at 50).

On July 1, 2020, Plaintiff's Founder and CEO, Dante Dean, emailed ASE that he would "be able to take care of the full balance" by the following week. (ECF No. 9-5, PageID.169). ASE responded that the current balance was $15,773.21, but that Plaintiff would be billed again on July 7, bringing the total balance to $16,901.11. (ECF No. 9-5, PageID.168). ASE also notified Mr. Dean that it had "obtained an offer from a liquidator for [Plaintiff's] product, but [that it would] put [the offer] on hold while [it] await[ed] . . . payment." (*Id.*). On August 10, 2020, after giving Mr. Dean more than a month to keep his promise of payment and receiving no response, ASE shipped approximately 1,500 cases of One Vodka to Defendant. (ECF No. 7-2, PageID.51; ECF No. 9-2, PageID.146; ECF No. 9-7, PageID.174). When Mr. Dean finally called ASE to make payment, he learned that Defendant had purchased ASE's inventory of One Vodka at the substantially discounted price of $30,310.50. (ECF No. 9-2, PageID.145-46; ECF No. 9-7, PageID.174).

---

[1] Spirits distributed in Michigan must have a COLA from the federal Alcohol, Tobacco, Tax & Trade Bureau and must be approved by the Michigan Liquor Control Commission prior to being offered for sale. *See* MICH. ADMIN CODE r. 436.1829; *see also* 27 U.S.C. § 205(e); 27 CFR 5.51(a).

Thereafter, Defendant began advertising One Vodka in its monthly online brochure. (ECF No. 9-8). The advertisement included a photograph of a One Vodka bottle bearing the One Vodka logo, Mr. Dean's registered trademark ("No. 5,224,607" or "the One Vodka Mark"). (ECF No. 7-4, PageID.75).



(ECF No. 9-3, PageID.155; ECF No. 9-8, PageID.190).

Between August and October 2020, Defendant sold sixty-five cases of One Vodka. (ECF No. 7-2, PageID.51). However, Defendant ultimately halted its sales in late October after receiving a cease-and-desist letter from Plaintiff's attorney. (*Id.*). On December 10, 2020, Mr. Dean gratuitously assigned his interests in the One Vodka Mark to Plaintiff. (ECF No. 9-12).

Four days later, Plaintiff filed suit in the Northern District of Texas, alleging among other things, that Defendant's use of the One Vodka Mark in conjunction with its discounted sale of Plaintiff's product was likely to deceive consumers, cause confusion, and devalue Plaintiff's brand. (Compl. ¶¶ 21, 25, 38, 53; ECF No. 7-8). Plaintiff also initiated an action against ASE in Texas state court, which was later

removed to the Northern District of Texas and reassigned to the Honorable Sam Cummings, who had been assigned this case. (ECF No. 7-6; ECF No. 11-3).

On June 14, 2021, Judge Cummings issued partial dismissals in both cases pursuant to 28 U.S.C. § 1406(a). (ECF No. 3); *One Vodka, LLC v. Redemption Spirits, LLC*, Civil Action No. 3:21-CV-0002-C, ECF No. 23 (N.D. Tex. June 14, 2021). The action against Defendant was transferred to this Court, (ECF No. 7-8), and the action against ASE was transferred to the Eastern District of Pennsylvania. (ECF No. 7-6).

On December 29, 2021, while Defendant's Motion to Dismiss [7] in this case was pending, the Honorable Gene Pratter granted in part and denied in part a motion to dismiss filed by ASE in the Pennsylvania action. *One Vodka, LLC v. Redemption Spirits, LLC*, No. 21-2654, 2021 U.S. Dist. LEXIS 247510 (E.D. Pa. Dec. 29, 2021). Defendant notified the Court of this development via its Motion for Leave to File Notice of Supplemental Authority or in the Alternative a Sur-Reply [11].

**PRELIMINARY ISSUES**

## I.    Defendant's Motion for Leave to File [11]

The determination of whether to permit a party to file a sur-reply or notice of supplemental authority "is committed to the sound discretion of the [district] court." *Brintley v. Belle River Cmty. Credit Union*, No. 17-13915, 2018 U.S. Dist. LEXIS 232134, at *2 (E.D. Mich. May 7, 2018) (quoting *Soc'y of St. Vincent De Paul in the*

*Archdiocese of Detroit v. Am. Textile Recycling Servs.*, No. 13-CV-14004, 2014 U.S. Dist. LEXIS 2136, at *10 (E.D. Mich. Jan. 8, 2014)). Here, because Defendant's Motion [11] provides information that did not exist at the time Defendant initially moved for dismissal and aids the Court in its evaluation, it will be **GRANTED**.[2] *See United States v. Athlone Indus., Inc.*, 746 F.2d 977, 985 (3d Cir. 1984) (finding persuasive the reasoning of an out-of-circuit district court companion case addressing the "precise issue" before the court).

## II.    Conversion Pursuant to FED. R. CIV. P. 12(d)

Although Defendant styled its Motion [7] as one for dismissal under Rule 12(b)(6), Defendant also included an affidavit and other extrinsic evidence that falls outside the scope of that rule. (ECF No. 7-2; ECF No. 7-7); *see Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 392 (6th Cir. 1975). Plaintiff engaged in similarly contradictory behavior, stressing that this "is not a summary proceeding" and that Defendant's Motion [7] "should be decided on the pleadings," while nevertheless introducing its own affidavit and extrinsic evidence. (ECF No. 9-2; ECF No. 9-5; ECF No. 9-6; ECF No. 9-7; ECF No. 9-8; ECF No. 9-9; ECF No. 9-10; ECF No. 9-12; ECF No. 12, PageID.303). The Court must decide whether to

---

[2] The Court notes that although Plaintiff now opposes Defendant's Motion for Leave to File [11], (ECF No. 12), Plaintiff made a very similar request—that the Court take notice of the Pennsylvania case—in its Response [9] to Defendant's Motion to Dismiss [7]. (ECF No. 9, PageID.120). True, this was before Judge Pratter issued a decision that Plaintiff finds partially objectionable, but the fact remains that Plaintiff initially agreed that the Pennsylvania matter was relevant to this action. (*Id.*).

exclude these matters outside the pleadings or convert Defendant's Motion [7] to one for summary judgment. *See* FED. R. CIV. P. 12(d).

Ultimately, because both parties rely heavily upon the extraneous materials in their arguments, the Court believes conversion is the better option. *See Dayco Corp.*, 523 F.2d at 392. Excluding the non-pleading matters even though both parties have had "a reasonable opportunity to present all [pertinent] material," FED. R. CIV. P. 12(d), would be inefficient, adding to costs and time for all. Furthermore, because Defendant's Motion [7] has been pending for nearly nine months and Plaintiff responded to Defendant's extrinsic material with extrinsic material of its own, the Court finds that neither party could be surprised by the Court's decision to convert and that notice is not required. *See Dayco Corp.*, 523 F.2d at 393 ("Whether notice of conversion is required or not depends on the facts and circumstances of each case. Where one party is likely to be surprised by the proceedings, notice is required. Since [plaintiff] participated in the pretrial proceedings and filed counter-affidavits, it cannot claim unfair surprise when the district court converted the motion to dismiss to one for summary judgment."); *see also Wysocki v. IBM*, 607 F.3d 1102, 1105 (6th Cir. 2010) (conversion without notice proper where "[plaintiff] had nearly five months after [defendant] filed its initial motion to dismiss, and nearly three months after [defendant] filed its reply, to request discovery or to file an affidavit or

additional materials"). Thus, Defendant's Motion to Dismiss [7] will be treated as one for summary judgment.

## Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one that 'might affect the outcome of the suit under the governing law.' And a genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the [nonmoving] party.'" *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849 (6th Cir. 2020) (citations omitted) (first quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); then quoting *Jackson v. VHS Detroit Receiving Hosp., Inc*., 814 F.3d 769, 775 (6th Cir. 2016)).

The moving party bears the burden of demonstrating an absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

> If the moving party meets this burden, the burden then shifts to the nonmoving party to establish a "genuine issue" for trial via "specific facts." Additionally, the moving party is entitled to summary judgment when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Abu-Joudeh*, 954 F.3d at 840 (citations omitted) (quoting *Celotex Corp*., 477 U.S. at 322, 324). The Court views all of the facts in the light most favorable to the nonmoving party and draws "all justifiable inferences" in the nonmoving party's

favor. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

Plaintiff's Complaint [1] arguably implicates four federal claims: trademark infringement, false designation of origin, trademark dilution, and false advertising; as well as claims for common law trademark infringement and state law unfair competition. However, Plaintiff's Response [9] failed to meaningfully respond to any of Defendant's arguments relating to trademark dilution or false advertising. (ECF No. 9, PageID.98). Both were mentioned only once—in Plaintiff's "Statement of Issues Presented," which contained no analysis. (*Id.*). Accordingly, they will be deemed forfeited. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *see also United States v. Montgomery*, 998 F.3d 693, 697-98 (6th Cir. 2021).

## I.   **Whether Plaintiff Can Proceed without Mr. Dean**

Defendant argues at the outset that Plaintiff's action should be dismissed in its entirety pursuant to FED. R. CIV. P. 12(b)(7) for failure to join Mr. Dean, the current registered owner of the One Vodka Mark. (ECF No. 7, PageID.22-23). Plaintiff responds that Mr. Dean is not a necessary party because he assigned his interest in the One Vodka Mark to Plaintiff. (ECF No. 9, PageID.111-12; ECF No. 9-12, PageID.232). Neither of these arguments is quite right.

Section 32(1) of the Lanham Act empowers the "registrant" of a trademark to sue for infringement of that mark. 15 U.S.C. § 1114(1). However, if the current registrant "had no rights at the time of infringement, [they] generally lack[] [statutory] standing to bring suit." *Thompson v. Doe*, 376 F. Supp. 3d 1322, 1328 (N.D. Ga. 2019); *cf. Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 41 (1923) ("Hence the plaintiff must not only have a legal title to the patent, but must have also been its owner at the time of the infringement."). Furthermore, "[a] predecessor's assignment of a trademark [ordinarily] carries no right to sue for past infringement, unless the assignment explicitly states that it includes such a right." *Persis Int'l, Inc. v. Burgett, Inc.*, No. 09 C 7451, 2011 U.S. Dist. LEXIS 115410, at *7 (N.D. Ill. Sep. 26, 2011) (collecting cases); *see H & J Foods, Inc. v. Reeder*, 477 F.2d 1053, 1056 (9th Cir. 1973); *George W. Luft Co. v. Zande Cosmetic Co.*, 142 F.2d 536, 541 (2d Cir. 1944); *see also Lawrence-Williams Co. v. Societe Enfants Gombault et Cie*, 52 F.2d 774, 777 (6th Cir. 1931) (explaining that "the grant . . . of the exclusive right to use the trade-marks . . . necessarily carried . . . the right to recover the profits . . . *arising after that date*" (emphasis added)); *cf. Moore v. Marsh*, 74 U.S. (7 Wall.) 515, 522 (1869) ("[I]t is a great mistake to suppose that the assignment of a patent carries with it a transfer of the right to damages for an infringement committed before such assignment.").

Here, although Plaintiff is presently the registrant of the One Vodka Mark by virtue of assignment, *see* 15 U.S.C. §§ 1127, 1060, that assignment document does not explicitly state that he has the right to sue for past infringement. (ECF No. 9-12, PageID.232). Furthermore, it is undisputed that the challenged conduct took place between August and October, well before the assignment was executed. Accordingly, it is only Mr. Dean, and not Plaintiff, who is entitled by § 32(1) to bring a claim for federal trademark infringement based on Defendant's sales.

Nevertheless, Defendant is incorrect that outright dismissal of the entire action is warranted. Plaintiff also brings claims under § 43(a) of the Lanham Act, which permits suit by "any person who believes that he or she is or is likely to be damaged." 15 U.S.C. § 1125(a). The same is true of Plaintiff's claims under Michigan law and common law. *See Tenneco Auto. Operating Co. v. Kingdom Auto. Parts*, 410 F. App'x 841, 845 (6th Cir. 2010) (explaining that "[t]he elements of all these claims are the same"). Consequently, even without Mr. Dean, Plaintiff is eligible for virtually identical recovery based upon similar proofs. *See Frisch's Rests. v. Elby's Big Boy*, 849 F.2d 1012, 1015 (6th Cir. 1988) (declining to reach the question of whether plaintiff had assignee standing under § 32(1) because plaintiff had also brought a claim under § 43(a)).

Moreover, Defendant's concern about duplicative litigation is unwarranted because the outcome in this action will be binding on Mr. Dean, who could have

joined this lawsuit as a co-Plaintiff to fully enforce his rights with respect to the One Vodka Mark. *See Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001))); *Wildfong v. Fireman's Fund Ins. Co.*, 181 Mich. App. 110, 116 (1989) ("[P]laintiffs not only had a right to control the proceedings in that lawsuit but actually did control the proceedings, deciding, as the president and vice president of the corporation, to settle the claims against defendants. It is clear that plaintiffs, as individuals, although not named individually in the initial lawsuit, for all intents and purposes were parties to that suit.").

Thus, Mr. Dean is not a necessary party under FED. R. CIV. P. 19 and his absence requires neither joinder nor dismissal of the entire action. Instead, the Court will grant judgment to Defendant on Plaintiff's claim for federal trademark infringement due to lack of statutory standing and proceed to address the remainder of Defendant's Motion [11].[3]

## II.    First-Sale Doctrine

Defendant is also entitled to summary judgment on Plaintiff's remaining claims in light of the first-sale doctrine. "The first-sale doctrine provides that 'a

---

[3] The Court notes that even if Plaintiff had statutory standing to pursue a claim for federal trademark infringement, Defendant would nevertheless be entitled to summary judgment on that claim because Defendant's use of the One Vodka Mark was permitted by the first-sale doctrine.

purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act.'" *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 766 (6th Cir. 2005) (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995)); *accord Brilliance Audio, Inc. v. Haights Cross Communs., Inc.*, 474 F.3d 365, 369 (6th Cir. 2007) ("[R]esale by the first purchaser of [an] original trademarked item is generally neither trademark infringement nor unfair competition." (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368-69 (1924)); *see also DeGidio v. W. Grp. Corp.*, 355 F.3d 506, 509-10 (6th Cir. 2004) ("[T]he same federal trademark principles apply to analogous federal and state common law claims." (citing *Daddy's Junky Music v. Big Daddy's Family Music*, 109 F.3d 275, 288 (6th Cir. 1997))).

Plaintiff resists this conclusion, insisting that Defendant cannot invoke the first-sale doctrine because ASE's sale of One Vodka was not authorized by Plaintiff. (ECF No. 9, PageID.114 (citing *RFA Brands, LLC v. Beauvais*, No. 13-14615, 2014 U.S. Dist. LEXIS 181781, at *19 (E.D. Mich. Dec. 23, 2014)). However, Plaintiff's argument is untenable in light of the plain language of its Engagement Agreement with ASE, which permitted the sale. Section VI.C.iii of that Agreement, titled "Insufficient funds in CLIENT designated account," provides, in pertinent part:

> If CLIENT fails to bring its account current for more than a thirty (30) day period, then ASE will issue to CLIENT a notice of possible default.

> If CLIENT does not cure within (5) business days by remitting all monies due, then ASE: (i) will assume full and clear title to all inventory in its management and may act to liquidate said inventory to recoup from CLIENT any and all expenses incurred under the Agreement for past and/or on-going storage, sale, liquidation or destruction of such abandoned inventory . . . .

(ECF No. 9-4, PageID.164).

ASE adhered to this provision. After Plaintiff failed to bring its account current for several months, ASE provided notice that it was prepared to liquidate its stock of Plaintiff's product. (ECF No. 9-5, PageID.168). Plaintiff was given more than a month to cure, but failed to do so. (ECF No. 7-2, PageID.51). Thus, ASE was entitled to "assume full and clear title to all inventory in its management and . . . liquidate said inventory." (ECF No. 9-4, PageID.164); *see also One Vodka LLC v. Redemption Spirits, LLC*, No. 21-2654, 2021 U.S. Dist. LEXIS 247510, at *15 (E.D. Pa. Dec. 29, 2021) (dismissing Plaintiff's claim of trademark infringement against ASE because the contract, "[p]lainly read, . . . permit[ted] [ASE] to sell the product").

Plaintiff's reliance on *Hallmark Licensing v. Dickens, Inc.*, No. 17-cv-2149 (SJF)(AYS), 2020 U.S. Dist. LEXIS 195710 (E.D.N.Y. Oct. 21, 2020), is misplaced. In that case, the plaintiff greeting card manufacturer contracted with a paper recycling company for the conversion of its greeting cards into paper pulp. *Id.* at *6. But instead of destroying the cards as the parties had agreed, the recycling company sold them, and eventually, a subsequent purchaser, the defendant, started reselling

some of the cards to the public. *Id.* The court, reviewing a report and recommendation for clear error, agreed that there was no authorized first sale because the transaction fell outside the scope of the parties' agreement, which only contemplated the service of destruction. *Id.* at *23.

Here, in contrast, Plaintiff's Agreement with ASE expressly contemplated a situation in which ASE could "assume full and clear title to all inventory in its management and . . . liquidate said inventory." (ECF No. 9-4, PageID.164). This assumption of title constituted a sale, as did ASE's subsequent sale to Defendant. *See Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 890 (Fed. Cir. 2017) (noting that "the more accurate terminology would not be 'first sale' but rather 'first authorized disposition by which title passes'" (quoting 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 8.12 (Matthew Bender ed., rev. ed. 2017)). The fact that Plaintiff was not enthused when ASE exercised its right to assume title and sell off the product is immaterial in light of the unambiguous language of the contract, which Plaintiff agreed to. *See United States v. Atherton*, 561 F.2d 747, 750 (9th Cir. 1977) (finding that "the first[-]sale doctrine includes involuntary transfers"); *Platt & Munk Co. v. Republic Graphics, Inc.*, 315 F.2d 847, 854 (2d Cir. 1963) (explaining that a "reasonable and recognized form of compulsory transfer, such as a judicial sale or court-compelled assignment" can constitute a "first sale").

15

Plaintiff's argument that ASE waived its right to liquidate by repeatedly letting Plaintiff make late payments, (ECF No. 9-2, PageID.145), is similarly unavailing. True, Pennsylvania law[4] permits contract provisions to be modified or waived through course of performance. *See* 13 PA. CONS. STAT. § 1303(a)(2), (f). And this is so, even where, as here, the contract expressly requires such waivers or modifications to be in writing. (ECF No. 9-4, PageID.166); *see Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 557 (1968). Nevertheless, "a party that has waived strict compliance with a payment term may . . . strictly enforce the original payment terms [once] it has provided notice of its intent to demand strict compliance and a reasonable time in which to comply." *See CONRAIL v. Foster Wheeler Envt'l Corp.*, 2000 U.S. Dist. LEXIS 13477, *48-49 (E.D. Pa. 2000) (citing *Haberski v. Hill*, Civil Action No. 85-7375, 1986 U.S. Dist. LEXIS 20776, at *9

---

[4] Michigan choice-of-law rules apply to the question of which state's law governs the Engagement Agreement. *See Performance Contracting, Inc. v. Dynasteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014) ("[T]o resolve conflicts between state laws, a federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941))); *see also Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015) ("If a case is transferred under 28 U.S.C. § 1406(a) because it was originally filed in the wrong venue, then the state law of the transferee district court applies." (citing *Martin v. Stokes*, 623 F.2d 469, 473 (6th Cir. 1980))). "In resolving choice-of-law issues, Michigan courts follow §§ 187 and 188 of the Second Restatement of Conflict of Laws." *Kipin Indus. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 493 (6th Cir. 1999) (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 124 (1995); *Martino v. Cottman Transmission Sys., Inc.*, 218 Mich. App. 54, 60 (1996)). Here, although there is no choice-of-law provision in the contract, it is clear that Pennsylvania had "the most significant relationship to the transaction and the parties," RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (AM. L. INST. 1988), because it is where the activities governed by the contract—importation, storage, and shipping—took place. Accordingly, Pennsylvania law applies. *See also One Vodka LLC*, 2021 U.S. Dist. LEXIS 247510, at *15 (applying Pennsylvania law in analyzing contract at issue).

(E.D. Pa. Sep. 5, 1986); *Dempsey v. Stauffer*, 312 F.2d 360, 363 (3d Cir. 1962);

*Riddle Co. v. Taubel*, 277 Pa. 95, 97 (1923)). Accordingly, even if Plaintiff is correct

that ASE initially waived its right to liquidate through course of performance,[5] ASE

was nevertheless entitled to later insist upon strict performance with proper notice,

which it did. *Id.*; (ECF No. 9-5, PageID.168).

Finally, although there are certain exceptions to the first-sale doctrine, none

apply here. There is no evidence, for example, that Plaintiff's product was

repackaged. *See Brilliance Audio, Inc.*, 474 F.3d at 369 (noting that the first-sale

doctrine does not apply "when the notice that the item has been repackaged is

inadequate" (citing *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085-86 (9th

Cir. 1998))). Nor is there any evidence that Defendant sold a "materially different"

version of One Vodka, another recognized exception. *See id.* at 370 (emphasis

omitted) (quoting *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302

---

[5] As an aside, the Court is not persuaded that ASE ever waived its right to liquidate. "[T]he effectiveness of a non-written modification in spite of a contract condition that modifications must be written depends upon whether enforcement of the condition is or is not barred by equitable considerations." *Universal Builders, Inc.*, 430 Pa. at 560. Here, Plaintiff's position—that ASE forever waived its right to liquidate in the event of a default because Plaintiff had been given leeway on late payments in the past—would produce an extraordinarily inequitable outcome for ASE. Moreover, there is no evidence that ASE had ever issued Plaintiff a notice of default and then declined to exercise its right to liquidate. Accordingly, a better reading of ASE's course of performance is that by repeatedly allowing Plaintiff to make late payments without penalty, ASE waived its right to *penalize* Plaintiff for default. For example, ASE could not have charged Plaintiff penalty fees for failing to keep in its account "at least one (1) month's Service Fees in excess of the liabilities then due," (ECF No. 9-4, PageID.164), at least not without first giving Plaintiff reasonable notice that strict performance would henceforth be expected.

(11th Cir. 2001)). On the contrary, Plaintiff concedes that Defendant purchased its product and then immediately began selling it without alteration. (Compl. ¶¶ 17, 19).

Lastly, there is no evidence that Defendant "used the [One Vodka Mark] in a manner likely to cause the public to believe [Defendant] was part of [Plaintiff's] authorized sales force or one of its franchisees.'" *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 257 (6th Cir. 2003) (quoting *Sebastian Int'l, Inc.*, 53 F.3d at 1076), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004). This exception applies only where a "reseller's conduct [goes] beyond the mere resale of the trademarked goods." *Sebastian Int'l, Inc.*, 53 F.3d at 1076 (citing *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 911, 916 (Fed. Cir. 1984) (plaintiff's logo featured prominently in a Yellow Pages advertisement for defendant's business); *Stormor v. Johnson*, 587 F. Supp. 275, 279 (W.D. Mich. 1984) (resellers "used plaintiff's promotional literature which had been stamped with defendants' names to advertise the availability of plaintiff's products")).

Here, Defendant did nothing more than list Plaintiff's genuine product in its online brochure, the digital equivalent of a physical shelf. Defendant did not, for example, advertise that it was the exclusive dealer of One Vodka in Michigan, even though such a statement would technically have been true. Nor did Defendant use the One Vodka Mark for any purpose other than describing Plaintiff's product.

Defendant's listing for One Vodka included an accurate photograph of a One Vodka bottle, accurate descriptive information about the product taken from its label ("French 5x Distilled"), One Vodka's registration number with the Michigan Liquor Control Commission, price information, and the Authorized Distribution Agent's registration number. (ECF No. 7-2, PageID.57; ECF No. 9-3, PageID.157; ECF No. 9-8, PageID.191; ECF No. 9-11, PageID.227); *see Liquor Control Prince List*, DEP'T LICENSING & REGUL. AFFS., https://liquorcontrolpricelist.apps.lara.state.mi.us/dt_lccc.asp?code=22034 [https://perma.cc/K6RB-VRZV] (last visited Mar. 16, 2022). In looking at the listing, no reasonable juror could find that Defendant used the One Vodka Mark "to give the impression that [it was a] favored or authorized dealer[]."*Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006) (citing *D 56, Inc. v. Berry's Inc.*, 955 F. Supp. 908, 910-20 (N.D. Ill. 1997)); *see Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 593 (5th Cir. 1993) ("Absent more culpable conduct on the part of the seller, we are unwilling to find misrepresentation in the mere act of putting a manufacturer's product on one's shelf and offering it for sale.").

At bottom, courts find exceptions to the first-sale doctrine when a reseller's practices create a likelihood of confusion. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1136 (9th Cir. 2010). Here, there is no evidence that

Defendant's use of the One Vodka Mark did, or even could have, created confusion. *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280 (listing relevant factors). Plaintiff and Defendant are in different businesses. Plaintiff produces a single product: One Vodka, which it sells only in Texas and Oklahoma. (ECF No. 7-2, PageID.50). Defendant sells hundreds of products to retailers, exclusively in Michigan. (*Id.* at 47-48; ECF No. 9-8). Because Michigan is a control state, Plaintiff would not have been able to sell One Vodka without going through an authorized broker like Defendant. MICH. COMP. LAWS § 436.1201(2). Against this backdrop, it is inconceivable that a retailer pursuing the hundreds of spirits advertised in Defendant's brochure could confuse Defendant for the producer of One Vodka. As Defendant puts it: "No reasonable person walks into Liquor Vault, buys a bottle of Jack Daniels, and confuses Liquor Vault for the maker of the whiskey." (ECF No. 7, PageID.34). The Court agrees.

Because Defendant did no more than engage in the authorized resale of genuine One Vodka, summary judgment is warranted on all of Plaintiff's remaining claims.

### CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Dismiss [7] is **CONVERTED** to a Motion for Summary Judgment and **GRANTED**.

20

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File [11] is **GRANTED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 22, 2022

21